IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20383
Summary Calendar
_____


JOHNNY RAY WHITE,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
(CA H 94-3594)
_____

March 21, 1997

Before GARWOOD, JOLLY and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Petitioner-appellant Johnny Ray White (White), a Texas state
prisoner serving a twelve-year sentence for possession of a
controlled substance, filed the present federal habeas corpus
petition.  White appeals the district court's grant of the State's
motion for summary judgment and denial of his petition.  For the
following reasons, we affirm.

_____

[*]    Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

## Facts and Proceedings Below

On the evening of April 18, 1988, Officer Richard Rios of the Houston Police Department and his partner, Officer Higgins, were patrolling a section of Houston's east side, an area known for its large number of drug-related incidents. The officers pulled into the parking lot of the Ship Channel Motel and turned off their headlights. Shortly before 1:00 a.m., the officers saw two men in the parking lot of the motel. The officers turned on their headlights and headed in the direction of the two men. When the patrol car was approximately ten feet away from the men, Officer Rios saw one of the men, White, drop a small plastic baggie to the ground. Officer Rios retrieved the baggie, field-tested the substance contained in the baggie, and determined that it was cocaine. White was then placed under arrest.[1] A chemist with the police department testified at trial that the bag contained approximately 75.3 milligrams of cocaine.

White was convicted of possession of a controlled substance in the 176th District Court of Harris County, Texas, and sentenced to a twelve-year prison term in the Texas Department of Criminal Justice. White's conviction was affirmed by the Court of Appeals for the Sixth District of Texas at Texarkana. No petition for discretionary review was submitted to the Texas Court of Criminal Appeals.

---

[1]   The individual who had been talking to White, one Curtis Hatchet, managed to flee the area.

White filed state habeas corpus petitions, which were all refused. White then filed the present petition for writ of habeas corpus in the United States District Court for the Southern District of Texas. The State moved for summary judgment, and White responded with a brief and affidavit in opposition. The district court granted the State's Motion for Summary Judgment and denied White's request for a Certificate of Probable Cause (CPC). This Court on April 5, 1996, granted White's CPC request, directing the State "to file a brief addressing application of the presumption of correctness and any other appropriate issues."

## Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Kopycinski v. Scott*, 64 F.3d 223, 225 (5th Cir. 1995). The district court's findings of fact are reviewed for clear error and issues of law are reviewed *de novo*. *Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir. 1996). We review mixed questions of law and fact, such as ineffective assistance of counsel claims, *de novo*. *Id*.

When reviewing a state prisoner's allegation that there is insufficient evidence to support the conviction, we apply the standard established in *Jackson v. Virginia*, 99 S.Ct. 2781 (1979), that is, we must determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

3

reasonable doubt."  *Id*. at 2789; *see also United States v. Misher*, 99 F.3d 664, 667 (5th Cir. 1996).

### Analysis

White contends on appeal to this Court that the district court erred in granting the State's Motion for Summary Judgment.  In support of his argument, White raises several points of error: (1) the district court erroneously applied the presumption of correctness to the state habeas court's findings of facts; (2) he was denied effective assistance of trial and appellate counsel; (3) he was denied a fair trial because the State failed to locate and subpoena witnesses, the State violated his discovery requests, and the jury was unfairly biased; (4) he was denied access to the state trial record; and (5) the evidence adduced at trial was insufficient to support his conviction.  We discuss each point of error in turn below.

A.   Presumption of Correctness

In granting the State's Motion for Summary Judgment, the district court applied a "presumption of correctness" to the state habeas court's findings of fact.[2]  Under 28 U.S.C. § 2254(d), a

---

[2]     The state habeas court, in its Proposed Findings of Fact and Order, adopted "the history of the case as set forth in Respondent's Original Answer," finding that

> "the facts asserted in the affidavits of Jeffrey S. Reddall and Jules L. Laird filed in this cause are true and that said facts together with the contents of official court records demonstrate that the totality of the representation afforded Applicant was sufficient to

4

federal habeas court accords state court findings of fact a presumption of correctness unless the petitioner can show that a statutory exception applies.[3]  28 U.S.C. § 2254(d); *May v. Collins*, 955 F.2d 299, 309 (5th Cir.), *cert. denied*, 112 S.Ct. 1925 (1992). In support of his contention that the court below should not have employed the section 2254(d) presumption of correctness, White argues that five of the eight statutory exceptions found under section 2254(d) apply to his case:

> "(1) that the merits of the factual dispute were not resolved in the State court hearing;
>
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
>
> . . .
>
> (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
>
> (6) that the applicant did not receive a full, fair, and

---

> protect his right to reasonably effective assistance of counsel at trial and on appeal."

[3]    On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, tit. I, § 104 (1996), which enacted significant amendments to the habeas corpus statutes, including 28 U.S.C. §§ 2244, 2254, 2255, and Fed. R. App. P. 22.  Neither of the parties has briefed to us or urged the applicability of any of the provisions of the AEDPA, and we have accordingly not expressly addressed it in this opinion (and our statutory references are to the pre-AEDPA provisions of the cited statutes).  However, we do conclude that nothing in the AEDPA would alter the ultimate disposition which we make today.  *See Moore v. Johnson*, 101 F.3d 1069 (5th Cir. 1996); *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996).

adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding . . . ." 28 U.S.C. § 2254(d).

First, White contends that the district court erred in relying on the state habeas court's findings of fact because the state court did not resolve all the disputed facts. *Id*. § 2254(d)(1). Specifically, White alleges that the state habeas court did not resolve factual disputes regarding whether Curtis Hatchet (Hatchet) and Paula Fields (Fields), potential witnesses, were in the Harris County Jail or on parole; whether there was any jury misconduct; whether White was denied exculpatory evidence; and whether he was denied effective assistance of counsel. Upon review of the record, we find these contentions meritless, as the state habeas court left no material factual dispute unresolved.

In his habeas petitions, White alleged that he was denied his right to compulsory process and effective assistance of counsel because the State and his trial attorney failed to locate and subpoena potential witnesses, including Hatchet and Fields. The record shows, however, that with the exception of Hatchet, White never gave his trial attorney Jeffrey Reddall (Reddall) or the State the names of any of these potential witnesses. Further, White never described what any of these witnesses would have testified to or whether they would have testified at all. Based on these as well as other deficiencies, the state habeas court

6

rejected White's ineffective assistance and compulsory process claims. As such, the factual issue of whether or not potential witnesses were in state custody or on parole was immaterial to the court's resolution of these claims.

As for the issues of jury misconduct, denial of exculpatory evidence, and denial of effective assistance of counsel, White makes only broad, conclusory allegations that unresolved factual disputes exist. He does not specify what facts the court failed to resolve or explain how any such factual disputes are material to his claims. We are satisfied that the state habeas court, in dismissing White's claims, considered and resolved all disputed facts with regard to these and other claims.

White also maintains that the district court erred in presuming the state habeas court's factual findings to be correct because the state court did not appoint an attorney to represent White in his state habeas action, 28 U.S.C. § 2254(d)(5), and because he was not given a copy of the state court records pursuant to the district court's order. *Id.* § 2254(d)(7). Neither argument has any merit. The Constitution does not guarantee counsel in a state habeas corpus proceeding; hence, White was not unlawfully denied representation of appointed counsel in deprivation of any constitutional right. *See Sterling v. Scott*, 57 F.3d 451, 454 n.4 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 715 (1996). Further, White alleges only that he was denied a copy of the state record

7

during the course of his federal habeas proceeding, which has nothing to do with the fairness of the state habeas fact finding proceedings.

Finally, White claims that the court below erroneously applied the presumption of correctness because the state court's fact-finding procedure was neither "adequate" nor "full and fair." 28 U.S.C. §§ 2254(d)(2),(6). White asserts that the fact-finding procedure was inadequate and unfair because the state habeas court did not hold an evidentiary hearing before making its findings of fact. State courts, however, "do not necessarily have to hold live evidentiary hearings for the presumption [of correctness] to attach, but may, in appropriate circumstances, resolve factual disputes on the basis of written affidavits." *Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir.), *cert. denied*, 113 S.Ct. 417 (1992); *see also Briddle v. Scott*, 63 F.3d 363, 378 n.27 (5th Cir.) (explaining that findings of fact based on affidavits may be entitled to a presumption of correctness), *cert. denied*, 116 S.Ct. 687 (1995). "[I]t is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claim." *May*, 955 F.2d at 312. In this case, the state habeas court based its findings of fact on, *inter alia*, written affidavits from White's trial and appellate counsel—which the court credited as true and accurate—as well as White's habeas petition and the state record as a whole. Thus, in

8

resolving the factual disputes and making its findings of fact, the court fully considered all relevant documents in the record.

White insists, however, that the state habeas court's "paper hearing" was inadequate because different judges presided over his trial and state habeas proceedings and because the court, in making its findings of fact, relied on the State's proposed findings of facts and trial and appellate counsels' affidavits without giving White an opportunity to submit his own proposed findings of facts. *See Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994) (stating that "a presumption of correctness will not apply to a state court finding of fact if the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing"), *cert. denied*, 115 S.Ct. 1709 (1995).

An evidentiary hearing in the state habeas court is not required every time the state habeas judge is different from the trial judge. *Perillo v. Johnson*, 79 F.3d 441, 445-47 (5th Cir. 1996). Rather, in our case-by-case review, the identity of the trial and state habeas judges is but one factor we consider when reviewing the adequacy and fairness of a particular paper hearing. *Id.* at 447; *see also Pierce v. Scott*, No. 94-20515, at 8-9 (5th Cir. July 3, 1995); *Nethery v. Collins*, 993 F.2d 1154, 1157 n.8 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1416 (1994). Although Judge Rains, the state habeas judge, did not preside over White's trial, he did preside over White's Motion for New Trial hearing.

9

At the new trial hearing, Judge Rains considered (and subsequently denied) White's Original Motion for New Trial and Second Amended Motion, both of which White filed *pro se*, as well as White's First Amended Motion, which White's court-appointed appellate attorney filed.[4]  Because he presided over the new trial hearing, Judge Rains had the benefit of observing the live testimony of Reddall, allowing Judge Rains to evaluate the veracity of Reddall's testimony.  Thus, although Judge Rains could not compare the information presented in counsels' affidavits against his own firsthand knowledge of the trial, *Perillo*, 79 F.3d at 447, he was able to compare the information presented in the state habeas proceedings against his firsthand knowledge of the new trial proceedings, which are really the crucial proceedings so far as concerns this habeas petition.

White also complains that the court's fact-finding procedure was inadequate because the court deprived him of the opportunity to file his own proposed findings of fact.  The state habeas court, after reviewing White's petition, requested affidavits from both trial and appellate counsel.  The court provided in its January 22, 1992, order that White and the State had twenty days after the affidavits of trial and appellate counsel were filed within which to file any proposed fact findings.  Reddall filed his affidavit on

---

[4]    Despite being given the opportunity, White declined to testify on behalf of his motions at the hearing.

February 10 and Jules Laird (Laird), White's appellate counsel, filed his affidavit on February 13. The court, however, made its fact findings on February 20, only one week after the affidavits were filed. Thus, White argues, he was not given the opportunity to submit his proposed fact findings for the court's consideration.

In its fact-finding procedure, the court fully considered, *inter alia*, the state record, White's habeas petition, and the affidavits of Reddall and Laird, which together provided the court with sufficient information to make its findings of fact. White never gave the court any indication that he would provide the court with any new or different information that was not already included in his habeas petition. And as it turned out, White's proposed findings of fact and attached affidavit, which White so vehemently complains the court should have considered before making its findings of fact, contained the exact same conclusory allegations he made in his petition for writ of habeas corpus. We are convinced (and the record contains nothing suggesting the contrary) that had the state habeas court waited until White submitted his proposed findings of fact and affidavit before making its findings of fact, the court would not have altered its findings of fact in any way.[5]

---

[5] We further note that because Reddall's and Laird's affidavits were filed on February 10 and February 13, respectively, White had until March 5 to file his proposed findings of fact with the court. White mailed his proposed findings of fact and attached affidavit on March 7, two days after the time to file had expired.

11

Moreover, this is not a situation where the parties submitted competing affidavits that created factual disputes. *See Lincecum*, 958 F.2d at 1279. Here, the only support offered by White for his claims was his own affidavit, while White's trial and appellate attorneys submitted credible affidavits which were completely consistent with the state record. The state habeas court credited the affidavits of Reddall and Laird, and properly so, as true and accurate. *See Baldree v. Johnson*, 99 F.3d 659, 662-63 (5th Cir. 1996) (explaining that state court chose to credit the State's affiants after observing testimony of affiants); *Buxton v. Lynaugh*, 879 F.2d 140, 142-46 (5th Cir. 1989) (same), *cert. denied*, 110 S.Ct. 3295 (1990); *Carter v. Collins*, 918 F.2d 1198, 202 (5th Cir. 1990) (stating that "a state court may evaluate an ineffective assistance of counsel claim by making credibility determinations based on affidavits submitted by the petitioner and the attorney"). Based on our review of the record, we conclude that the district court did not err in applying the presumption of correctness to the state habeas court's findings of fact.

B. Ineffective Assistance of Trial Counsel

In his petition, White raises numerous allegations of ineffective assistance by his trial counsel. He argues that his trial counsel, Jeffrey Reddall, was ineffective because he failed to (1) subpoena and interview certain named witnesses, and in particular, Curtis Hatchet; (2) investigate jury misconduct; (3)

12

inform White of a discovery agreement counsel had with the State; (4) prepare for trial; (5) obtain full discovery from the State; (6) file a motion to suppress; (7) obtain a laboratory report or fingerprint analysis of the cocaine and the plastic baggie; and (8) object to improper comments by the prosecutor.

To prove ineffective assistance of counsel, White must demonstrate both that (1) his attorney's representation was deficient, that is, it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984). The defendant has the burden of proving ineffective assistance. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). To show deficient performance, White must demonstrate that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). In order to prove that he was prejudiced, White must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2068. A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 2065 (internal quotation and citation omitted). Failure to

13

establish both deficient performance and prejudice defeats an ineffectiveness claim. *King v. Puckett*, 1 F.3d 280, 285 (5th Cir. 1993).

1.   Failure to Interview and Subpoena Witnesses

White alleges that he gave Reddall the names of potential defense witnesses, including Curtis Hatchet, Paula Fields, Dorothy Payton, Jessie Fargus, June Moore, Christopher Joseph, and Shandra White, and that Reddall should have interviewed or subpoenaed these witnesses, or at the very least, requested a continuance until these witnesses could be located. Reddall's failure to do any of the above, White argues, constituted deficient performance that prejudiced his defense. We disagree.

Adequately supported state habeas findings established that White never gave Reddall the names of any potential witnesses other than Curtis Hatchet and some unknown man named "Jessie." With respect to Hatchet, White informed Reddall in their initial meeting that Hatchet was with him on the night he was arrested. When asked how Hatchet could be contacted, White told Reddall that Hatchet was his good friend and that he would contact Hatchet so that Reddall could interview him. On the day of the scheduled interview, White showed up alone and told Reddall that he could not locate Hatchet. Reddall later contacted White's previous attorneys, who told Reddall that they too had not been able to locate Hatchet.[6] In the

_____

[6]   White had initially retained private counsel. Eventually his retained counsel withdrew, at which point Reddall was appointed by

14

course of Reddall's representation of White, White never gave him Hatchet's telephone number or address, nor did White have Hatchet contact Reddall. Despite his efforts, Reddall was unable to contact Hatchet and, indeed, even the State could not locate Hatchet through its subpoena. The properly credited state new trial and state habeas evidence shows that neither Reddall, the State, nor White himself could locate Hatchet. At the very least, Reddall made a good-faith effort to locate Hatchet, and thus his failure to track down Hatchet does not amount to deficient performance.

Even if we were to assume, *arguendo*, that Reddall's inability to interview or subpoena these alleged witnesses constituted deficient performance, White has not shown that his defense was prejudiced because of the alleged deficiency. In order for White to demonstrate the requisite *Strickland* prejudice, he must show that these witnesses would have testified at trial and that their testimony would have been favorable to White. *See Alexander*, 775 F.2d at 602; *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. denied*, 105 S.Ct. 524 (1984). Nowhere in his brief to this Court does White discuss in any detail what information these particular witnesses had, what they would have testified to, or

the state court to represent White.

15

whether they would have testified even if given the opportunity.[7]

White provides no basis on which we can conclude that these witnesses could have provided testimony that would have changed the outcome of his trial.[8]

---

[7]    Even in his Brief in Support of Petition For Writ of Habeas Corpus filed in the district court below, White makes only conclusory allegations that

> "[t]hese witnesses would have testified that (applicant) petitioner had no dope (cocaine), did not use cocaine, that Curtis Hatchet did not walk or run away when the officer approached and that officer Rios found a empty clear baggie by the dumpster, behind the building across the driveway, that petitioner was no where near the dumpster and there were many empty bags like the one officer Rios found."

White also states in his affidavit in support of his Opposition to Respondent's Motion for Summary Judgment that some of these witnesses were present when he was arrested at the motel. However, he does not explain what each of the witnesses saw, what these witnesses would have testified to, or whether any of the witnesses would have testified at all.

[8]    As we said in *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987), in denying habeas relief based on a claim of inadequate representation by failing to investigate or call witnesses:

> "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). Where the only evidence of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985).

White has submitted nothing from any of the alleged uncalled witnesses, or from any third party, indicating what the testimony of the uncalled witnesses would have been; nor are his own allegations anything but conclusory in this respect.

16

For the same reasons, Reddall's decision not to obtain a continuance was neither deficient nor prejudicial to White's case. White provided Reddall with the name of only Curtis Hatchet as a potential witness, and after almost a year of searching, Reddall, the State and White himself could not locate Hatchet. White has not shown that a continuance would have resulted in the discovery of Hatchet or any other witness.

Finally, White argues that Reddall's representation was ineffective because he did not interview State's witnesses Officer Rios and chemist K.K. Alexander, or Officer Higgins, who was with Officer Rios at the time of White's arrest. As with White's claim that Reddall failed to interview or subpoena defense witnesses, White never explains how Reddall's decision not to interview the State's witnesses resulted in actual prejudice to his defense. Hence, this claim fails as well.

2.   Failure to Investigate Jury Misconduct

White alleges that he and Reddall were approached by two female jurors after the verdict and were told that other jurors persuaded them to change their verdict to guilty after discussing White's failure to testify and because White was seen in handcuffs when the jurors were on their lunch break. White claims Reddall provided ineffective assistance because he failed to investigate these claims. Both claims are addressed separately below.

a.   Jury Discussion of White's Failure to Testify

White complains that Reddall should have investigated

17

potential jury misconduct when he learned from the two jurors that other jurors persuaded them to change their verdict to guilty after the jury discussed White's failure to testify.[9]  The record, however, supports the state habeas court's implicit rejection of White's complaint.  In his affidavit Reddall stated that he was approached by one juror, Karen Peters (Peters), after the verdict was reached and was told that she was the lone juror who initially voted not guilty, but after thinking about the case during the lunch break she decided to vote guilty based on her reconsideration of the evidence.  Reddall asked Peters whether she or any of the jurors took into consideration White's failure to testify, to which Peters responded that "no one discussed this point" and that she was neither forced nor coerced into changing her vote.  Reddall told White about the conversation, that such was a possible area of inquiry for a motion for a new trial, and that he should discuss it with his appellate attorney.    Reddall also told White's appellate counsel, Laird, about his conversation with Peters.  In preparation for White's Motion for New Trial, Laird attempted to contact the jurors to determine whether there was any jury misconduct of any kind.  Of the six who could be contacted, none indicated that their vote was influenced by anything other than the evidence or that they were coerced in any way.  Most notably, juror

---

[9]    According to White, he decided not to testify because he believed Reddall lied about the court granting his Motion to Prohibit the State From Mentioning Any Extraneous Offenses or Extraneous Acts of Misconduct.

18

Peters told Laird that although she initially believed White was not guilty, she changed her mind based on the evidence presented at trial, which is exactly what she told Reddall during their conversation.

Reddall's and Laird's accounts of the events are consistent with the record. Conversely, White has made only conclusory allegations without affidavits from any of the jurors or other evidence that would support his allegation of jury misconduct. *See Barnett v. State*, 847 S.W.2d 678, 679 (Tex.App.--Texarkana 1993) (explaining that "[c]onclusory allegations of jury misconduct are insufficient to require the court to grant a motion for new trial"). Because the evidence supports the state habeas court's implicit conclusion that the jury did not discuss or consider White's failure to testify during deliberations, Reddall's decision not to investigate the claim cannot possibly be construed as either deficient or prejudicial.

b.   Jury's Seeing White in Handcuffs

White also claims that Reddall failed to provide effective assistance because he did not investigate White's claim that jurors changed their vote to guilty after seeing him in handcuffs. White asserts that while the jurors were on their lunch break during deliberations, they saw White being escorted to the lobby elevator in handcuffs. He claims that he informed Reddall of what had happened, but that Reddall did nothing to cure the problem. He

19

also alleges that after the verdict, the same two jurors who had told Reddall and him that they had changed their vote to guilty after discussing White's failure to testify also said that seeing White in handcuffs influenced their vote.

Again, the record supports the state habeas court's rejection of White's claim. Reddall testified at the new trial hearing that he first heard of the alleged handcuffing incident from Laird the day before the new trial hearing. Not surprisingly, Laird stated in his affidavit that he was not informed by White until the day before the new trial hearing that White's jury misconduct claim would include the allegation that the jury saw him in handcuffs.[10] Laird's own investigation of possible jury misconduct, discussed above, revealed that nothing other than the evidence presented at trial influenced the jury's verdict. White did not raise this issue in his *pro se* original motion for new trial.

However, even assuming, *arguendo*, that the jury did see White in handcuffs, such a finding would not necessarily mean that he would be entitled to relief. A defendant is not necessarily prejudiced by a brief or incidental viewing by the jury of the

---

[10] In his affidavit, Laird explained that he did not learn of White's claim that the jury saw him in handcuffs until he received White's Second Amended Motion for New Trial, which White gave to Laird on July 20, 1989, the day before the hearing. Although later in his affidavit he stated that he did not find out about this jury misconduct claim until the day of the hearing, this discrepancy appears to be due to Laird's confusion regarding the date of the hearing.

20

defendant in handcuffs. To receive some form of relief, the defendant must show he suffered actual prejudice from the exposure. *King v. Lynaugh*, 828 F.2d 257, 264-65 (5th Cir. 1987), *vacated on other grounds*, 850 F.2d 1055 (5th Cir. 1988), *cert. denied*, 109 S.Ct. 1563 (1989); *United States v. Diecidue*, 603 F.2d 535, 549-50 (5th Cir. 1979), *cert. denied*, 100 S.Ct. 1345 (1980); *Wright v. Texas*, 533 F.2d 185, 187-88 (5th Cir. 1976). "Defendants accused of crimes are . . . entitled to physical indicia of innocence in their jury trials. This Court has declared, however, that brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." *Diecidue*, 603 F.2d at 549 *(citing Wright*, 533 F.2d at 187).

In *Diecidue*, the defendants were seen in shackles being led into or out of the courtroom and courthouse by jurors during jury selection and trial. The court upheld the lower court's decision to deny the defendants' motions for a new trial because, as the court found, "the conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial" and were not such as to justify any assumption of prejudice. *Id*. at 549. *See also Gates v. Zant*, 863 F.2d 1492, 1502 (11th Cir.), *cert. denied*, 110 S.Ct. 353 (1989).

21

Here, as in *Diecidue*, any display of White in handcuffs to the jury was, at most, brief and inadvertent. Thus, even if the jury had, in fact, seen White in handcuffs, he suffered no prejudice from the brief display. Because no jury misconduct occurred, trial counsel did not render ineffective assistance by choosing not to investigate the claim.

3.    Failure to Inform White of Discovery Agreement

White complains that Reddall did not inform him of the discovery agreement that Reddall had with the State until the day of his trial. This claim is meritless, as the record shows that White was fully aware of the State's open file policy and that he never objected to this arrangement. Moreover, Reddall's representation would not be considered deficient even if, as White alleges, Reddall had not timely informed him of the discovery agreement. While counsel's failure to inform defendant of a plea offer or advise defendant of his right to appeal may constitute ineffective assistance of counsel, *see Teague*, 60 F.3d at 1170-71 (plea offer); *Norris v. Wainwright*, 588 F.2d 130, 135 (5th Cir.) (right to appeal), *cert. denied*, 100 S.Ct. 93 (1979), most decisions do not require consultation with the defendant. In this case, Reddall's decision to accept the State's offer to examine freely White's file cannot be considered so uniquely important a decision or development such that Reddall's failure to inform White of the agreement would constitute deficient performance. Moreover,

22

White fails to explain how he was prejudiced by not being informed of the discovery agreement.

### 4. Failure to Present Any Defense

White's contention that Reddall failed to present any evidence or put on any defense is meritless. The evidence, implicitly credited by the state habeas court, shows that in preparing White's defense, Reddall met several times with White to review the facts of the case and discuss potential witnesses and defenses. Reddall reviewed the State's file on several occasions, filed numerous motions, and with little or no help from White, attempted to contact defense witness Curtis Hatchet. Reddall went to the crime scene and spoke with employees of the motel to determine if they knew of any facts or witnesses. At trial, Reddall called as a defense witness Ino Huang, manager of the Ship Channel Motel, to testify about the poor lighting at the motel parking lot and vigorously cross-examined the State's witnesses. We conclude, based on our review of the record, that White's claim in this respect lacks merit.

### 5. Failure to Obtain Full Discovery From the State

White claims that Reddall was ineffective because he failed to obtain from the State material requested in discovery motions. As a result of his attorney's inaction, White believes that he was deprived of defense witnesses, denied an opportunity to obtain a fingerprint analysis of the plastic baggie, and denied the opportunity to obtain witness statements to use for impeachment

23

purposes.

Reddall filed with the Clerk of the Court and the District Attorney's Office numerous motions, including a Motion to Produce Exculpatory and Mitigating Evidence, Motion for Discovery of Witnesses Favorable to Defendant, Motion for Production of Witnesses Statements, Motion for the Discovery and Inspection of Evidence, and Motion for List of State's Witnesses. Reddall met with the prosecutor and they agreed on all items contained in the motions. Pursuant to their agreement, the prosecutor maintained an open file policy and allowed Reddall full access to White's file up until the date of trial. Evidence implicitly credited by the state habeas court reflects that Reddall informed White that the prosecutor agreed on all items in the discovery motion, and White did not object to the discovery agreement. Reddall's method of discovery with the State was neither deficient nor prejudicial to White.

6.    Failure to File a Motion to Suppress

We likewise reject White's complaint that Reddall's decision not to file a motion to suppress the cocaine was deficient and prejudicial. There is nothing in the record that would indicate to us that any evidence used against White was obtained by the State through illegal activities or procedures so as to violate any of White's constitutional or statutory rights. Because there is nothing to indicate that White could have successfully suppressed any of the evidence used against him, Reddall did not render

24

deficient or prejudicial performance in choosing to forego a suppression motion.

7.    Failure to Obtain Lab Report or Fingerprint Analysis

Next, White claims that Reddall's representation was ineffective because he failed to obtain a fingerprint analysis of the plastic baggie which contained the cocaine and a laboratory report on the substance in the baggie. The evidence presented at trial shows that Officer Rios saw White throw the baggie to the ground and that the tests conducted by both Officer Rios and chemist Alexander revealed that the substance was cocaine. White does not point to any evidence that would show that had Reddall conducted independent tests on the baggie or the cocaine, the results would have contradicted the State's evidence. *See, e.g., Holdren v. Legursky*, 16 F.3d 57, 63-64 (4th Cir.), *cert. denied*, 115 S.Ct. 106 (1994). White fails to demonstrate the necessary deficient performance and prejudice.

8.    Failure to Object to Improper Comments by the Prosecutor

White's final ineffective assistance of trial counsel argument is that Reddall should have objected to comments made by the prosecutor during closing arguments. These allegedly improper comments included statements that the defense had the same subpoena power as the State, that Officer Rios saw White throw down the baggie because he was trained to always keep his eyes on a person's hands and any weapons the person might be holding, and that Curtis

25

Hatchet ran away when he saw Officers Rios and Higgins approaching in their patrol car.

These remarks were neither inflammatory nor misleading. The prosecutor stayed within the record, permissibly making summations and reasonable deductions from the evidence. Reddall's decision not to object to these statements was neither deficient nor likely to have actually prejudiced White's defense.

C.    Ineffective Assistance of Appellate Counsel

White contends that his court-appointed appellate counsel, Jules Laird, was ineffective because he failed to raise the issue of jury misconduct through a motion for new trial or on appeal and failed to raise an ineffective assistance of trial counsel claim based on trial counsel's alleged failure to obtain full discovery from the State, defense witnesses, and exculpatory evidence.

To establish that appellate counsel rendered ineffective assistance, White must satisfy the standards set forth in *Strickland*, that is, White must show that (1) his appellate counsel's performance was so deficient as to fall below objectively reasonable conduct of appellate counsel and (2) appellate counsel's failure to perform according to reasonable professional standards actually prejudiced his appeal. *United States v. Patten*, 40 F.3d 774, 776-77 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 2558 (1995); *United States v. Merida*, 985 F.2d 198, 202 (5th Cir. 1993).

Laird's decision not to raise the jury misconduct claim on

26

appeal cannot be construed as deficient performance. Adequate evidence implicitly credited by the state habeas court shows that Laird decided not to raise the argument that the jury discussed White's failure to testify because he believed that argument was meritless. As discussed earlier, Laird contacted six of the twelve jurors in White's trial, and none of them indicated that there was any discussion of White's failure to testify during the jury deliberations or that his failure to testify influenced any of their votes. Karen Peters, the only known juror who initially believed White was innocent but eventually voted to convict, told Laird that she was in no way influenced by White's failure to testify. At White's new trial hearing, Reddall explained that Peters told him only that she would have liked to hear White testify, not that his failure to testify influenced her vote. Thus, it was not unreasonable for Laird to elect not to pursue this argument on appeal; nor is there a showing of prejudice for failure to do so.

Moreover, Laird did not act unreasonably by deciding not to raise in White's new trial motion and on appeal White's claim that the jury saw him in handcuffs. Evidence credited by the state habeas court shows that prior to the new trial hearing, Laird spoke with White regarding the issues he wanted to raise on his appeal. White made no mention of the jury's having seen him in handcuffs. In fact, Laird did not learn of the handcuff allegation until Laird received White's Second Amended Motion for New Trial on the day

27

before the new trial hearing. Also, Laird did not discover during his investigation of jury misconduct any evidence that would have supported White's claim. Nor has the requisite showing of prejudice been made in this respect.

As to White's argument that Laird should have raised an ineffective assistance of trial counsel claim based on Reddall's alleged failure to obtain full discovery, defense witnesses, and exculpatory evidence, we conclude that this argument lacks merit. We have already rejected White's ineffective assistance of trial counsel claim with regard to these and other points of error; accordingly, White could not have prevailed on that claim on appeal. Thus, even assuming, *arguendo*, that Laird's performance was in some way deficient, White fails to satisfy the second prong of *Strickland*—that he was prejudiced by appellate counsel's decision not to raise those issues on appeal.

D. Denial of Fair Trial

White maintains that he did not receive a fair trial because the State violated his Sixth Amendment rights by refusing to serve subpoenas on potential defense witnesses; the State denied White an opportunity to inspect and copy discovery material; and the jury was unfairly biased because members of the jury saw White in handcuffs and discussed White's failure to testify.

White contends that he was denied the right to compulsory process on witnesses favorable to the defense, namely Curtis

28

Hatchet, Jessie Fargus, Paula Fields, and Dorothy Payton. White also contends that the State, despite its claim that it was unable to locate Hatchet to serve him with a subpoena, willfully failed to enforce the subpoena even though Hatchet was in the State's custody. In other words, White does not dispute the fact that the State had subpoenaed Hatchet, but argues only that the State should have known where he could be found.

As we established earlier, the only potential defense witnesses named by White prior to trial were Curtis Hatchet and someone designated only as "Jessie." Hence, White may not now complain that he was denied the right to have witnesses other than Hatchet testify on his behalf, as he never provided anyone with the names of these witnesses. In any event, White fails to explain how any of these witnesses were material to the defense, what they would have testified to, whether they were available to testify, or whether they were willing to testify at all. *See Alexander*, 775 F.2d at 602. Moreover, although a defendant is guaranteed the right to compulsory process for attendance of witnesses in his favor, the right proscribes "the government's making a witness unavailable and thereby preventing a defendant from interviewing and determining whether he will subpoena and call the witness in his defense. Thus, the government may not deny the defendant access to a witness by hiding him out." *United States v. Colin*, 928 F.2d 676, 679 (5th Cir. 1991) (*quoting United States v. Henao*,

29

652 F.2d 591, 592 (5th Cir. Unit B 1981)). White does not argue that the State hid any of the witnesses or otherwise made them unavailable, nor does he dispute the State's assertion that it made an effort to serve Hatchet with a subpoena at his home address. And, as previously discussed, no one could find Hatchet, and White has not adequately explained in his brief or below just what Hatchet would testify to (and that he would testify).

As for White's remaining due process claims, the record shows that up until the date of trial, the State maintained an open file policy, allowing White's trial counsel full access to the State's files. Evidence credited by the state new trial and habeas court also shows that the jury verdict was in no way influenced by White's failure to testify or by the jury's seeing White in handcuffs. Accordingly, we reject White's compulsory process and due process claims.

E.   Denial of Access to Trial Record

White also claims that, despite the district court's order that the State forward him those portions of the transcript referenced in the Motion for Summary Judgment, the State failed to provide him with such materials. The record indicates, however, that pursuant to the court's order, the State mailed White a complete copy of the state court record to White's prison unit. Also, in his appellate brief, White quotes directly from the record on several occasions, including quotes of alleged improper comments made by the prosecutor at trial. This claim is meritless.

F.    Sufficiency of the Evidence

Finally, White argues that the State did not present sufficient evidence to support his conviction.  Specifically, he asserts that the State failed to prove that he was in possession of cocaine or that he intentionally or knowingly possessed cocaine. He also argues that the State failed to corroborate the testimony of its main witness, Officer Rios, either by producing physical evidence of the cocaine or through the testimony of another individual, such as Officer Higgins.

When analyzing the sufficiency of the evidence in a habeas corpus proceeding, we must refer to the substantive elements of the criminal offense as defined by state law.  *Foy v. Donnelly*, 959 F.2d 1307, 1313-14 (5th Cir. 1992).  "Under Texas law, [i]n order to establish the unlawful possession of a controlled substance the State must prove two elements:  (1) that the accused exercised care, control and [or] management over the contraband, and (2) that the accused knew that the matter possessed was contraband." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (internal quotation and citation omitted).

Officer Rios testified that on the night of the arrest, he observed White with another unidentified male, at which time Officer Rios approached White in his patrol car and turned on the high beams.  As White began walking in the opposite direction, Officer Rios noticed that White dropped a "little clear baggie on

31

the ground." Officer Rios retrieved the baggie, which contained a white powdery substance, and conducted a field test, which revealed that the substance was cocaine. Officer Rios kept the bag and cocaine, tagged the evidence and placed it in a submission envelope, sealed the envelope, and dropped the envelope off at the lab for analysis. At trial, Officer Rios identified State's Exhibit Number 3 as the clear baggie with the powdery substance.

K.K. Alexander, a chemist with the Houston Police Department, received State's Exhibit Number 2, the evidence envelope. Alexander testified that the envelope was sealed when he obtained it from the narcotic lock box, which can be opened only by the chemist. Alexander then tested the powdery substance by doing four color tests, one ultraviolet spectrophotometry, three thin-layer chromatography tests, and one microcrystalline test. Based upon these tests, Alexander concluded that the substance was cocaine. Alexander opined that the weight of the cocaine was 75.3 milligrams, or less than twenty-eight grams.

Based on our review of the evidence adduced at trial, and viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found that White exercised care, control, and management over the cocaine and White intentionally and knowingly possessed the cocaine. Moreover, his attempt to abandon the cocaine, which he had personal possession of, is sufficient evidence from which a rational trier of fact could conclude that his possession of the substance was knowing.

32

*See, e.g., Blackmon v. State*, 830 S.W.2d 711, 713-14 (Tex.App.--Houston (1st Dist.) 1992) (evidence sufficient where officer saw defendant throw object which later was discovered to contain crack cocaine). We reject White's assertion that, because the State failed to corroborate Officer Rios's testimony with some physical evidence or testimony, his conviction was not supported by the evidence as a matter of law. White improperly attempts to apply the requirement of independent corroboration of accomplice-witness testimony under Texas state law to the testimony of Officer Rios who, of course, is not an accomplice witness.[11] Upon review of the entire record, we conclude that all of White's sufficiency of the evidence challenges are meritless.

### Conclusion

For the foregoing reasons, the district court's summary judgment order denying White's petition for habeas corpus relief is

AFFIRMED.

---

[11] In any event, the accomplice-witness rule is not controlling upon collateral review by this Court. *See Brown v. Collins*, 937 F.2d 175, 182 n.12 (5th Cir. 1991); *Llewellyn v. Stynchcombe*, 609 F.2d 194, 196 (5th Cir. 1980)